[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
By a six count amended complaint dated August 26, 1991, plaintiff, New London Savings Bank and others (plaintiffs), brought suit against a number of defendants, including Allen Furnald, d/b/a Allen Electric (Furnald or Allen Electric).
According to the complaint, the relevant facts are as follows. On September 30, 1988, a fire broke out at Flanders Plaza, a strip shopping mall, in East Lyme, Connecticut. The fire allegedly originated in the ceiling area of Globe Securities Systems, Co., a commercial tenant of the plaza. Count six of the complaint specifically alleges that prior to the fire, Globe had renovation work performed in its office space. As part of the renovation, Allen Electric was allegedly hired to install fluorescent light fixtures in Globe's ceiling. The plaintiffs claim that Allen Electric was negligent in its supervision, installation, and testing of the light fixtures which ultimately led to the fire.[1]
By a motion filed with the court on December 5, 1994, CT Page 9432 Allen Electric moved for summary judgment claiming that the statute of limitations bars plaintiffs' action. Allen Electric asserts that no work was performed in the Globe premises after 1981. Since this action was commenced in 1990, Allen Electric claims that count six is time barred by the three year statute of limitations contained in General Statutes § 52-577 or § 52-584.
The plaintiffs oppose Allen Electric's motion for summary judgment claiming that an issue of fact exists as to whether the statute of limitations period has run on their claim. The plaintiffs specifically allege that Allen Electric had an ongoing duty and/or engaged in a continuing course of conduct with the plaza that tolled the statute of limitations. The plaintiffs further allege that a portion of their claim is predicated on a products liability action which would allegedly be timely.[2]
 DISCUSSION
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277,279, 567 A.2d 829 (1989).
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of a material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted.) Scinto v. Stamm, 224 Conn. 524, 530, 620 A.2d 99
(1993).
"To support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of duty that remained in existence CT Page 9433 after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." (Citation omitted; internal quotation marks omitted.) Connellv. Colwell, 214 Conn. 242, 254, 571 A.2d 116 (1990). A continuing course of conduct "consists of . . . either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Id. 225.
In support of their motion for summary judgment, the defendant submitted the deposition of Allen Furnald, owner of Allen Electric, in which he avers that "[a]s far as I can tell from the records available to me, my company never went back to the Globe premises for any purposes after November 1981. (Affidavit of Allen Furnald, paragraph 4). Furnald also states that while Allen Electric did a number of jobs at the strip mall, it was "[n]ever hired on a retainer or continuing basis." Id. 5. In a reply memorandum, Allen Electric submitted portions of the deposition of Thomas J. Tucciarone, one of the owner-partners of the plaza, in which he agreed with the statement that Allen Electric "had no obligation to come and make periodic inspections of the Plaza." Tucciarone responded, "None at all." (Deposition of Tucciarone, May 14, 1993, p. 242).
In opposition, the plaintiffs claim that there is an issue of fact in dispute regarding Allen Electric's continuing duty and/or special relationship with the plaza. Plaintiffs point out that Allen Electric performed all of the electrical work at the plaza from approximately 1978, until the 1988 fire. (Deposition of Allen Furnald, April 5, 1993, p. 141). When a tenant in the plaza attempted to hire an electrician other than Allen Electric, the manager of the plaza, Norman Maxson, stopped them and insisted that Allen Electric perform the work. (Deposition of Allen Furnald, April 5, 1993, p. 147.). Although Allen Electric had no contractual obligation to come back to the plaza and inspect its work, when the firm was called in for a job, it was authorized to fix minor deficiencies found in the course of doing the requested work. (Deposition of Norman Maxson, December 10, 1993, p. 72-73). On smaller jobs, Allen Electric was not required to submit an estimate to the manager of the plaza, but could go ahead and do the work and submit an invoice which would eventually be paid. Id. CT Page 9434
Even though Allen Electric had no contract to perform the work, the facts as stated above could give rise to an inference that Allen Electric was more than just a per job electrician for the plaza that may or may not support a finding of a special relationship based on an implied contract.
Furthermore, the court finds a genuine issue of material fact in dispute regarding the last time that Allen Electric performed work in Globe's office space. In Furnald's affidavit, he avers that his company never went back to Globe's space after November 1981. (Furnald affidavit, paragraph 4). At his deposition, however, Furnald testified that he threw out work records that he did not think had any purpose, and retained the documents which he thought would be needed for the litigation. At the time, Furnald was under the impression that the fire may have started in another area of the building. (Deposition of Furnald, April 5, 1993, p. 126).[3] Thus, there is a possibility that Furnald threw out relevant records that may indicate that work was done in the Globe area.
An invoice dated on April 4, 1988 indicated that Allen Electric changed a ballast and a light tube, but it does not state where the work was performed. In their brief in opposition to the motion for summary judgment, plaintiffs assert that Walt Toma, an employee of Allen Electric, recalled performing work in the Globe reception and/or storage room in 1986 or 1987. While the plaintiffs have failed to attach Toma's deposition to their motion, the large number of invoices submitted by the plaintiffs demonstrate that extensive and ongoing electric/repair work was performed at the plaza over the course of many years which may or may not have been done in Globe's office. The plaintiffs have successfully raised some doubt as to whether Allen Electric ever went back to Globe based on the number of invoices attached to their memorandum in conjunction with the fact that some paperwork showing where specific jobs were performed had been thrown out.
Because of there exists a material issue of fact in dispute regarding the relationship between Allen Electric and the owners of the plaza as well as doubt as to when work was last performed at Globe's office, the court must deny CT Page 9435 defendant's motion for summary judgment.
CONCLUSION
For the above stated reasons, Allen Electric's motion for summary judgment in these consolidated cases is denied.
Hurley, J.